# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**PHILLIP SINGFIELD,**

      **Plaintiff,**

                                 **Civil Action 2:15-cv-2842**
      **v.**                          **Chief Judge Edmund A. Sargus, Jr.**
                                    **Magistrate Judge Elizabeth P. Deavers**

**KELLI D. CARDARAS**, *et al.,*

## REPORT AND RECOMMENDATION

Plaintiff, Phillip Singfield, a state inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Defendants' Motion to Dismiss (ECF No. 9) and Plaintiff's Memorandum in Opposition (ECF No. 14).  For the reasons that follow, it is **RECOMMENDED** that Defendants Motion to Dismiss be **GRANTED**.

## I.

Plaintiff filed this action on September 17, 2015.  (ECF No. 1.)  According to the Complaint, an ultrasound performed in 2010 revealed that Plaintiff had an enlarged lymph node in his groin.  Plaintiff alleges that the lymph node causes him "severe pain and makes it difficult to walk."  (Compl. ¶ 7, ECF No. 5.)  He alleges that he has "complained of pain and begged for treatment" of this lymph node for four years.  (*Id*. at ¶ 8.)

Over the past four years, Plaintiff says he has undergone five ultrasounds.  Upon arrival

at Ross Correctional Institution ("RCI") in September 2013, he began to treat with Defendant Nurse Practitioner Cardaras.  N.P. Cardaras informed Plaintiff that she would forward his medical records to a physician.  She prescribed over-the-counter medication to treat his complaints of pain.  She subsequently checked him for prostate cancer and prescribed additional pain medication.  Plaintiff requested to see a specialist about his enlarged lymph node, informed N.P. Cardaras that the pain medication she prescribed was ineffective, and requested different pain medication.

After approximately six weeks had past since his last treatment visit, Plaintiff saw N.P. Cardaras walking across the prison yard.  He stopped her to inform her that he was still in pain and asked whether she had heard from the physician.  Later that day, Plaintiff sent a medical request form to N.P. Cardaras.  He received a pass to see her three days later.  N.P. Cardaras informed Plaintiff that she had been authorized to order an additional ultrasound.  She also inquired whether Plaintiff was experiencing depression and asked whether he was interested in a prescription for depression medication.  Plaintiff declined medication and again informed her that he wanted to see a specialist and be prescribed different pain medication.

On October 17, 2014, Plaintiff received another ultrasound, which revealed that Plaintiff still had an enlarged lymph node in his groin area.  At a follow-up visit, N.P. Cardaras ordered blood work and an x-ray.  She also prescribed fifty milligrams of the pain medication Ultram, to be taken twice per day.  Upon review of the x-ray, N.P. Cardaras informed Plaintiff that the pain he was experiencing was likely attributable to arthritis in his hip.  Citing his recollection of a doctor's review of an x-ray taken prior to his transfer to RCI, Plaintiff alleges that his bones are fine.  During his most recent visit with Plaintiff, N.P. Cardaras discontinued his prescription for

Ultram.  Plaintiff alleges that his pain has worsened as a result.

He alleges that N.P. Cardaras rendered medical treatment that is "grossly incompetent" and "withheld medication and treatment" that caused him increased pain.  In terms of relief, Plaintiff seeks monetary damages in the amount of $150,000 against each Defendant, as well as "[a]ny additional relief this Court deems just, proper, and equitable."  (*Id*. at ¶¶ 36, 39.)

Exhibits Plaintiff attaches to his Complaint reflect that he filed an informal complaint with Defendant Lisa Bethel, the prison's healthcare administrator and that Defendant Bethel denied his complaint.  In the decision affirming the denial issued by Nurse Mona Parks, Assistant Chief Inspector (Medical), she informed Plaintiff that she had reviewed his records and discovered that "numerous blood tests to try to determine the reason for [his] groin nodes being enlarged" had been taken.  (ECF No. 5 at p. 20.)  Nurse Parks then explained the results of the blood tests, as well as the results of his urine tests, noting that they were largely normal.  She also discussed the results of his ultrasounds and his left-hip x-ray, including the diagnoses of "osteoarthritis, left hip."  (*Id*.)  Nurse Parks also noted that he had tested positive for the Herpes virus HSV I and HVII and pointed out that he had been "educated on the results of the x-rays and blood tests and on safe use of OTC medication in addition to weight loss and [had been] shown [his] x-rays."  (*Id*.)  Nurse Parks also offered Plaintiff her opinion that his alleged pain in his left groin area appeared to be attributable to "the arthritis to [his] hip area with a flare up of herpes."  (*Id*.)

In their Motion to Dismiss, Defendants assert that Plaintiff's official capacity claims are barred by Eleventh Amendment.  Defendants further assert that Plaintiff's individual capacity claims should be dismissed for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Defendants posit that neither Ms. Bethel's failure to grant Plaintiff's grievance nor her supervisory role over N.P. Cardaras form the basis of a claim upon which relief can be granted.  With regard to Defendant Cardaras, Defendants maintain that Plaintiff's allegations establish nothing more than a difference in opinion concerning the proper treatment, which, they assert, falls short of establishing a medical indifference claim.

In his Memorandum in Opposition, Plaintiff argues that Defendant Cardaras "took the easier, less efficient route" to treat him, which he maintains establishes the requisite deliberate indifference to state an Eighth Amendment claim.  (Pl.'s Mem. in Opp. 3, ECF No. 14.)  He adds that N.P. Cardaras does not have the proper equipment to assess whether his enlarged lymph node is cancer.  Plaintiff further indicates that Defendant Cardaras "basically did nothing to alleviate [his] pain," explaining that the over-the-counter medication that she prescribes is ineffective.  (*Id.*)

## II.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III.

### A.    Plaintiff's Official Capacity Claims

The Undersigned agrees with Defendants, that to the extent Plaintiff seeks money damages from them in their official capacities, the Eleventh Amendment bars his claims. The Eleventh Amendment provides as follows:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's official capacity claims.

### B. Plaintiff's Individual Capacity Claims

#### 1. Defendant Bethel

Beyond alleging that Defendant Bethel "conspired" with N.P. Cardaras "in refusing to provide [him] with the proper medical care," (Compl. ¶ 5, ECF No. 5), Plaintiff's Complaint fails to include allegations setting forth how Defendant Bethel was involved in violating his rights. In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal

6

involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Beyond Plaintiff's conclusory allegation of a "conspiracy," the Exhibits to his Complaint to reflect that Defendant Bethel processed his grievance against N.P. Cardaras. But the United States Court of Appeals for the Sixth Circuit has repeatedly held that responding to a grievance or participating in the grievance procedure is insufficient to trigger liability under § 1983. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) ("Prison officials are not liable under § 1983 for denying or failing to act on grievances."); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). The Undersigned therefore finds that Plaintiff's Complaint provides insufficient factual content or context from which the Court could reasonably infer that Defendant Bethel was personally involved in any violation of Plaintiff's rights.

Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's individual capacity claims against Defendant Bethel.

### 2.     Defendant Cardaras

The Undersigned also agrees with Defendants that Plaintiff has failed to sufficiently allege that they acted with deliberate indifference toward any serious medical need that he presented.

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted).  A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).  The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).]  The subjective component regards prison officials' state of mind.  *Id*.  Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted).  The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 896 (internal quotation marks and citation omitted).

*Barnett*, 414 F. App'x at 787–88; *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness.  Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." (citations omitted)).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*.  However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

*Alspaugh*, 643 F.3d at 169.  *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If

8

the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id*. at 591 (quotation marks and citation omitted).

In the instant action, Plaintiff's allegations, together with the Exhibits he attaches to his Complaint, reflect that he has obtained treatment for his medical complaints in the form of multiple examinations, four ultrasounds, numerous blood tests, urine tests, pain medications, and a prostate cancer screening and x-ray.  As a result of these examinations and tests, Plaintiff had been diagnosed with an enlarged lymph node, osteoarthritis in his left hip, and the Herpes virus HSV I and HSV II.  In view of the medical treatment that Plaintiff acknowledges he received, the Undersigned cannot conclude that his treatment was so "woefully inadequate as to amount to no treatment at all," *Alspaugh*, 643 F.3d at 169 (quoting *Westlake*, 537 F.2d at 860 n.5).  Nor can the Undersigned conclude that Defendant Cardaras was aware of a risk to Plaintiff's health that she consciously disregarded.  Rather, on the facts Plaintiff alleges, it appears that Defendant Cardaras ordered numerous tests, including ultrasounds, blood tests, urine tests, and an x-ray, to confirm that he did not require additional treatment.

Plaintiff's allegations that Defendant Cardaras failed to follow his proposed treatment plan, which included different medications and treatment by a specialist, does not save his claim. The Sixth Circuit has repeatedly held that medical personnel's decision not to follow an inmate's

9

treatment proposals or preferences fails to state a claim for medical indifference.  *See, e.g.*, *White v. Corr. Med. Servs., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) (doctor's refusal to prescribe inmate's preferred medications "amounted to only negligence or a difference of opinion" rather than "a deliberate indifference to his medical needs"); *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim."); *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain . . . does not support an Eighth Amendment claim" and noting that "[t]he district court properly declined to second-guess [the doctor's] medical judgment"); *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) ("[A] difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim.").

In sum, the Undersigned finds that Plaintiff has failed to allege more than a difference in opinion with respect to his medical treatment, which is insufficient to sustain a claim of deliberate indifference.  Although the Court is sympathetic to his complaints of continued pain, his allegations fail to reflect that his pain is attributable to the gross inadequacy of the treatment he received from Defendant Cardaras or that her conduct rises to the level of a constitutional violation.  It is therefore **RECOMMENDED** that the Court **DISMISS** Plaintiff's individual capacity claims against Defendant Cardaras.

**IV.**

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion to

Dismiss (ECF No. 9) be **GRANTED** and that Plaintiff's claims be **DISMISSED** for failure to

state a claim.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

11

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


DATE: March 21, 2016                    /s/  *Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**